No. 12-0152 - <u>Arthur Thornsbury and Virginia Thornsbury v. Cabot Oil & Gas Corporation</u>

**FILED**

**September 26, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

I dissent from the majority's decision in this case insofar as it concludes that the parties had an agreement whereby Cabot Oil & Gas Corporation ("Cabot') would be permitted to build a road only two hundred feet in length on the Thornsburys' property in exchange for five hundred dollars and that to the extent the road exceeds that length, Cabot is liable to the Thornsburys. A review of the record shows that the majority has completely misconstrued the parties' agreement.

Cabot, as the lessee of the minerals underlying the Thornsburys' property, has the right to enter the property and do what is reasonably necessary to extract the minerals,[1] which includes the right to construct a road to its drilling site.[2] Therefore, Cabot did not need

---

[1]*See* Syl. Pt.1, *Squires v. Lafferty*, 95 W.Va. 307, 121 S.E. 90 (1924) ("The owner of the mineral underlying land possesses as incident to this ownership the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate.").

[2]*See* Syl. Pt. 2, *Coffindaffer v. Hope Natural Gas Co.*, 74 W.Va. 107, 81 S.E. 966 (1914) ("A person having the right to go upon another's land 'to bore and develop said land for oil and gas, with the necessary usual and convenient rights' therefor, has the right to build a road over the land, when necessary to haul machinery and material to the place selected for

1

to obtain permission from the Thornsburys to build a road in order to exercise its mineral rights and, in fact, it did not do so.  Rather, the record shows that Cabot approached the Thornsburys and the Vances, the owners of the property adjoining the Thornsburys, seeking a right-of-way two hundred feet in length because it was uncertain as to the boundary lines of the properties.  As Cabot explained during discovery,

> The 1949 lease granted Cabot the right to construct any and all roads, pipelines and structures on the surface incident to the development of the mineral estate.  The road right of way was taken only for the purposes of avoiding any dispute about on whose surface property the road at its beginning point was located, due the vague boundary descriptions applicable to the plaintiffs' estate and the adjoining surface estate (Vance).  Given the potential dispute between the adjoining surface owners as to the property boundary description for the area in question, Cabot obtained the right of way so that there could be no dispute as to surface ownership at the starting point of the road.

Thus, the agreement between the parties was not for the purpose of allowing Cabot to build a road *only* two hundred feet in length.  It was simply a right-of-way to avoid any potential dispute with the adjoining land owner as to whether the beginning point of the road was actually located on the surface of the land where Cabot leased the mineral rights.

Importantly, after the parties executed the right-of-way agreement, Mr. Thornsbury acknowledged that Cabot was the lessee of the mineral rights to the subject

drilling a well.").

property and had a right to develop them. He executed an affidavit on September 27, 2006, which stated:

> I, the Affiant herein, recognize Tug Fork Land Company, their successor and/or assign as the owner of the oil and gas, the oil and gas rights, and the oil and gas interests, in and to the above described land.
>
> I, the Affiant herein, recognize the right of the owners of the oil and gas to execute an oil and gas lease(s) covering the above described land and the right of the Lessees in and to such lease(s) to go upon the land and explore, prospect, drill, produce use, and develop it under the terms of such oil and gas lease(s).
>
> I, the Affiant herein, recognize Cabot Oil & Gas Corporation, 900 Lee Street East, Suite 1500 Huntington Square, Charleston, West Virginia 25301, as the oil and gas leasehold interest owners in and to the above described lands.

Thus, the majority's conclusion that "[t]he record establishes that in 2006, Cabot and the Thornsburys contracted that Cabot (1) would build a road 200 feet in length on the 30 acre tract, [and] (2) would built it in the location described in the right-of-way agreement[]" is not supported by the record.

In summary, I believe the majority's decision to remand this case on the Thornsburys' claim for breach of contract because Cabot built a road that exceeded two feet in length is error; it is not supported in law or fact. As demonstrated above, the parties' agreement was for a two hundred foot right-of-way. As lessee of the minerals, Cabot had the right to build a road of any length necessary to exercise its right to build a gas well on the

3

property. Mr. Thornsbury recognized that right when he executed his affidavit. The Thornsburys did not assert any cause of action for violation of the common law with respect to Cabot's use of the surface to extract the minerals nor did they allege any violation of the Oil and Gas Production Damage Compensation Act, West Virginia Code §§ 22-7-1 to -8. Accordingly, there is no basis to reverse the circuit court's grant of summary judgment on this claim.

I agree with the majority on one point. The record does establish that as part of the right-of-way agreement, Cabot agreed to "stack all timber ten (10) inches and larger" on that portion of land described therein. Clearly, there are genuine issues of material fact as to whether Cabot breached this part of the agreement. In that regard, the Thornsburys have asserted that Cabot failed to stack any of the timber. Cabot has countered that none of the timber it removed was suitable for stacking.

Therefore, for the reasons set forth above, I would have affirmed the circuit court's grant of summary judgment to Cabot as to the Thornsburys' claim that Cabot breached their right-of-way agreement by building a road that exceeded two hundred feet in length. I would have reversed the circuit court's grant of summary judgment only as to the Thornsburys' claim for breach of contract based on Cabot's alleged failure to stack the timber on the two hundred foot right-of-way.

4

Accordingly, I respectfully concur, in part, and dissent, in part, to the majority's decision in this case. I am authorized to state that Chief Justice Benjamin joins me in this separate opinion.